```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRIS JUDAY, et al.              :       CIVIL ACTION
                                 :
        v.                       :
                                 :
MARK T. SADAKA, et al.           :       NO. 19-1643
```

MEMORANDUM

Bartle, J.                                    August 30, 2019

Plaintiffs Chris Juday and Pat Juday ("the Judays") have sued their attorneys who represented them in the case of <u>Juday, et al., v. Merck & Co., Inc., et al.</u>, Civil Action No. 16-1547 in this court. The defendants are Mark T. Sadaka and Sadaka Associates LLC (collectively "the Sadaka defendants"); Michael S. Katz, Andrew W. Knox, and Lopez McHugh LLP (collectively "the Lopez McHugh defendants"); and Joseph Capelli, Thomas J. Joyce, and Marc J. Bern & Partners LLP (collectively "the Bern defendants").[1] Count I of the complaint alleges Legal Malpractice (Tort), Count II alleges Legal Malpractice (Contract), and Count III alleges Unjust Enrichment.

Before the court are the motions of the Bern defendants and the Lopez McHugh defendants to dismiss all or part of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Bern defendants have moved to dismiss

---

1. Marc J. Bern & Partners LLP was formerly known as Bern Capelli LLP.

the complaint in its entirety, while the Lopez McHugh defendants have moved to dismiss Counts II and III.[2]

I

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits

---

2. The Sadaka defendants have not moved to dismiss any counts and have filed an answer.

attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).  The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

II

For present purposes, we accept as true the allegations set forth in the complaint.  Chris Juday received Zostavax on March 2, 2014 in Indiana.  Within a week, he became ill and was diagnosed with severe chickenpox on March 12, 2014.  He became so sick that he is now no longer able to work.

The Judays worked with attorneys in Indiana to make a claim before the United States Court of Federal Claims under the National Vaccine Injury Compensation Program.  That Court dismissed their action because Zostavax is not included in the program.  Through this process, the Judays learned that a two-year statute of limitations would apply if they wanted to bring a lawsuit in a federal or state court.

On or about September 17, 2015, the Judays contacted attorney Mark Sadaka about filing such a suit on their behalf.[3] Sadaka, who held himself out on the internet as an expert in handing cases involving Zostavax injures, agreed to represent them. In either their initial phone conversation or follow-up discussions soon after, the Judays gave Sadaka information about their case and informed him that they believed the statute of limitations would run on March 12, 2016. This representation began in September 2015, although the Sadaka firm and the Judays did not execute an engagement letter until a year later, on September 6, 2016.

Some time in Fall 2015, Sadaka told the Judays that their lawsuit would be filed in the United States District Court for the Eastern District of Pennsylvania. At the time, Sadaka was licensed only in New Jersey but advised the Judays that he was in the process of obtaining a license to practice in Pennsylvania. He promised the Judays that if he was not licensed to practice in Pennsylvania in time to file a complaint in the Eastern District of Pennsylvania, he would work with another lawyer who had the ability to do so. Sadaka assured the Judays that he would be the attorney working on their case, including the drafting of the complaint.

---

3. The complaint identifies this date as September 16, 2015 in a different paragraph.

On April 5, 2016, it was the Lopez McHugh defendants, not the Sadaka firm, who signed and filed the complaint in the underlying litigation against Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively "Merck") in this court. A paralegal from the Sadaka firm provided the Judays with a copy of the complaint in June 2016. Sadaka did not advise the Judays that he had not personally filed the action. According to the Judays, they did not notice that the Lopez McHugh defendants were the ones who had signed the complaint on their behalf. The Judays had no direct contact with these defendants at any time.

On July 7, 2016, Capelli, one of the Bern defendants, entered an appearance for the Judays in the underlying litigation, while Katz and Knox of Lopez McHugh withdrew their appearances a few days later, on July 11, 2016 and July 12, 2016, respectively. Although the Judays do not know to what extent the Lopez McHugh defendants remained involved in their case, they believe that they remained informed as to the status of their case because those attorneys were copied on correspondence dated May 2, 2017 between Capelli, of the Bern firm, and the Judays.

The court held a status conference in chambers on July 12, 2016 and thereafter entered its First Scheduling Order providing dates for discovery, motions, and trial. Capelli attended the status conference on behalf of the Judays. The

Bern firm, including Joyce, "apparently" continued to represent the Judays during the discovery period, although Joyce did not enter his appearance until December 5, 2016.

The Judays did not become aware that the Bern defendants were involved in their case until they were contacted by an associate at the Bern firm in September 2016. Sadaka then confirmed with the Judays that he was working with the Bern defendants but never told the Judays about the Lopez McHugh defendants, who had filed the complaint.

Defendant Merck took discovery, including depositions of the Judays, between August 18, 2016 and February 6, 2017. During this time, however, attorneys for the Judays did not notice any depositions or propound any interrogatories or discovery requests. Merck filed a motion for summary judgment on February 6, 2017 on the ground that the statute of limitations had expired before the complaint was filed. The Bern defendants filed a response in opposition on behalf of the Judays.

The court held argument on Merck's motion for summary judgment on March 23, 2017 and then ordered supplemental briefing on the issue of the statute of limitations. The Bern defendants still represented the Judays at this time.

The court entered summary judgment in favor of Merck on April 17, 2017. The court held that the statute of

limitation began to run on March 13, 2014 because Chris Juday not only had an "'unrebutted suspicion' that he had suffered an injury from the Zostavax vaccine administered to him on March 2, 2014 but also had information that there was a 'reasonable possibility' at that time that there was a causal connection between the vaccine and his symptoms." Juday v. Merck & Co., Inc., No. 16-1547, 2017 WL 1374527, at *5 (E.D. Pa. Apr. 17, 2017). A timely lawsuit should therefore have been filed on or before March 13, 2016. As noted above, the Lopez McHugh defendants did not file the complaint until April 5, 2016.

For the first time at oral argument, Joyce of the Bern firm asserted that Merck had engaged in fraudulent concealment, thereby tolling the statute of limitations and making the complaint timely. He pointed to Pat Juday's deposition testimony that her husband's doctor had reported that Merck informed his office that chickenpox was not a known reaction to the Zostavax vaccine.

The court rejected this belated argument because the statements relied upon inadmissible hearsay. Id. at *6. Moreover, there was no evidence in the record that Pat Juday had conveyed this information to her husband so that there was nothing to suggest that Chris Juday had relied upon this information to delay filing the lawsuit. Nor was there any

evidence that any statement by Merck "deflected the Judays in any way." Id. at *7.

The Judays did not learn about Merck's motion for summary judgment until Capelli sent the Judays a letter on May 2, 2017, in which he advised them that the court had entered judgment in favor of Merck and that their claims had all been "dismissed."

Katz of the Lopez McHugh firm re-entered his appearance on behalf of the Judays and filed a notice of appeal to the Court of Appeals for the Third Circuit on May 11, 2017. On April 4, 2018, the Court of Appeals affirmed the decision of this court. Juday v. Merck & Co. Inc., 730 Fed. Appx. 107, 112 (3d Cir. 2018).[4] It was not until months later, on July 3, 2018,

---

4. The Judays have since continued to pursue their claims against Merck, without success. This court denied their motion to intervene in another shingles action against Merck before the undersigned. The Judays had sought to access the discovery produced by Merck in that case. See Dotter v. Merck & Co., Inc., et al., No. 16-4686, 2018 WL 5303326 (E.D. Pa. Oct. 24, 2018). The Judays next moved pursuant to Rules 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure to vacate the court's summary judgment order entered against them in the underlying action. The court denied the motion. Juday v. Merck & Co., Inc., 329 F.R.D. 151 (E.D. Pa. 2018). The Judays, undeterred, then brought a "Federal Rule 60(d)(1) Independent Action" against Merck seeking to set aside the summary judgment order entered against them and to reinstate their complaint. The court dismissed this action for failure to state a claim under Rule 12(b)(6). Juday v. Merck & Co., Inc., No. 19-2037, 2019 WL 3066392 (E.D. Pa. Jul. 12, 2019).

that Sadaka finally entered his appearance on the docket as an attorney for the Judays.

III

We first turn to Count I of the complaint, which alleges Legal Malpractice (Tort) against every defendant. Only the Bern defendants have moved to dismiss this count on the ground that the Judays have not plead sufficient facts to support their claim that the Bern defendants negligently represented the Judays. The complaint does not allege that the Bern firm played any role in the late filing of the underlying action. The Judays instead focus their negligence claim against these defendants on their failure with respect to the issue of fraudulent concealment.

In order to state a claim of legal malpractice under Pennsylvania law, a plaintiff must demonstrate "(1) employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of the damage to plaintiff." Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998). Furthermore, an essential element to the cause of action is "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." Id. at 1030. In essence, a plaintiff must prove "a case within a case," that is, that he had a

"viable" cause of action against the defendant in the underlying case and that the attorney was negligent in prosecuting the underlying case. Id.

Count I of the complaint states that "each of the Defendants," breached the following duties to the Judays,

    (a)   Failing to enter into a written engagement with the client either at all, or in a timely manner;

    (b)   Failing to disclose the identity of all attorneys working on the legal matter;

    (c)   Failing to properly calculate the applicable statute of limitations for each of the Judays' claims;

    (d)   Failing to timely file the Judays' lawsuit;

    (e)   Failing to take appropriate discovery regarding issues that could toll the applicable statute of limitations, such as fraudulent concealment of any connection between Mr. Juday's health and Zostavax;

    (f)   Failing to take appropriate discovery to overcome a motion for summary judgment on statute of limitations grounds;

    (g)   Failing to properly respond to a motion for summary judgment with reliable admissible evidence;

    (h)   Failing to depose the nurse practitioner who reported Mr. Juday's health problems to Merck;

    (i)   Failing to discover who at Merck told Mr. Juday's nurse practitioner that the Zostavax vaccine was not known to cause chickenpox when Mr. Juday's condition was reported to Merck;

    (j)   Failing to move for an extension of discovery to have sufficient time or ability to discover who at Merck told Mr. Juday's nurse practitioner that

>    the Zostavax vaccine was not known to cause chickenpox when Mr. Juday's condition was reported to Merck;
>
> (k) Failing to avail the Judays of the benefits to Fed. R. Civ. P. 56(e) to delay decision on the pending motion for summary judgment filed on statute of limitations grounds until all necessary discovery could be completed.

The Judays focus their allegations against the Bern defendants to the period including discovery and Merck's summary judgment motion. As noted above, they contend that had the Bern defendants conducted adequate discovery and "attach[ed] sufficient evidence of fraudulent concealment" to their response to Merck's motion for summary judgment, or moved under Rule 56(e) or for additional discovery time, the court would not have granted Merck's motion.

Fraudulent concealment may toll the statute of limitations when "through fraud or concealment the defendant causes the plaintiff to relax vigilance of deviate from the right of inquiry." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985). The doctrine does not require fraud "in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception." Id. (internal quotations omitted). The defendant "must have done something amounting to an affirmative inducement of the plaintiff to delay bringing the action." Id. (internal quotations omitted).

The Bern defendants argue that fraudulent concealment did not exist as a possible defense to toll the statute of limitations because the Judays did not allege that they were mislead by Merck as to the source of Mr. Juday's injuries or that they delayed pursuing their claims as a result. Instead, they knew of the date of the statute of limitations and diligently sought to bring suit against Merck.

While this court did not find any evidence in the record in the underlying action to support a claim for fraudulent concealment, and the Court of Appeals affirmed, that does not mean that no such evidence exists. At their depositions, Pat Juday was not asked if she had ever relayed the conversation to her husband, nor was he questioned about it. Juday v. Merck & Co. Inc., 730 Fed. Appx. 107, 112 (3d Cir. 2018). Moreover, attorneys for the Judays never noticed any depositions or made any discovery requests before the district court granted Merck's motion for summary judgment. Id. Had their attorneys taken any discovery, the Judays may have been able to support their belated fraudulent concealment argument with admissible evidence. Because their action was brought less than one month after the statute of limitations had expired, even a brief tolling period would have made their complaint timely.

The "case within a case" that the Judays must prove in order to succeed on their claim of legal malpractice is fact intensive and dependent on discovery that the Judays do not possess. We will permit this claim to go forward at this stage in the litigation so that the Judays may discover whether evidence existed that would support fraudulent concealment. Whether or not there is any factual basis for a claim of fraudulent concealment must await another day.

Accordingly, the motion of the Bern defendants to dismiss Count I will be denied.

IV

We next turn to Count II of the complaint, which alleges Legal Malpractice (Contract) against each defendant. The breaches of duty that the Judays identify under Count II are identical to those alleged in Count I. Both the Bern defendants and the Lopez McHugh defendants have moved to dismiss this count. Defendants argue that the Judays' claim is barred by the gist of the action doctrine because defendants' alleged malpractice sounds in tort, rather than contract.

The Pennsylvania Supreme Court clarified the "gist of the action" doctrine in <u>Bruno v. Erie Ins. Co.</u>, 106 A.3d 48 (Pa. 2014). The Court explained that when a plantiff brings tort and contract claims together, a court must look to the nature of the

-13-

duty allegedly breached to decide if the claim constitutes a tort or breach of contract. The Court explained,

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. . . . If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. (internal citation omitted).

Id. at 68.

Since Bruno, Pennsylvania courts have routinely applied the gist of the action doctrine to legal malpractice actions and dismissed claims brought under contract law that actually "are based on failure of defendants to abide by the relevant professional standard of care." New York C. Mut. Ins. Co. v. Edelstein, No. 14-0829, 2015 WL 412519, at *6 (M.D. Pa. Jan. 30, 2015); see also Jacoby Donner, P.C. v. Aristone Realty Capital, LLC, No. 17-2206, 2018 WL 1609341 (E.D. Pa. Apr. 2, 2018); Brenco Oil, Inc. v. Blaney, No. 17-3938, 2017 WL 6367893 (E.D. Pa. Dec. 13, 2017); Rinker v. Amori, No. 15-1293, 2016 WL 1110217, at *7 (M.D. Pa. Mar. 22, 2016).

The Judays do not allege that the Bern defendants and the Lopez McHugh defendants had failed to perform a particular task as required by a contract between the parties. Instead,

the essence of their claims is that their attorneys breached the required professional standard of care.  In fact, the eleven ways in which defendants "breached their professional duties and obligations to the Judays" are identical to those listed in the claim for legal malpractice sounding in negligence in Count I.

Accordingly, Count II will be dismissed as to both the Bern defendants and the Lopez McHugh defendants.

V

Count III brings claims of Unjust Enrichment against each defendant.  Both the Bern defendants and the Lopez McHugh defendants argue that plaintiffs have failed to state a claim upon which relief can be granted because there is no allegation that the Judays paid them for any legal services performed.

In order to state a claim for unjust enrichment, the plaintiff must demonstrate "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  Lackner v. Glosser, 892 A.2d 21, 34 (Pa. Super. 2006).  When these elements are present, "the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred.  Id.  The doctrine of unjust enrichment is inapplicable where an express contract exists.  Id.

The Judays entered into a written contract with the Sadaka defendants, in which the firm agreed to represent the Judays for a contingency fee. Under this arrangement, the Judays only were required to pay the Sadaka firm if they prevailed in their suit.

By contrast, the Judays do not contend that they had any contract with the Bern or Lopez McHugh defendants when the firms performed legal services for them. While lack of a contract is a threshold requirement in order to recover under quasi-contract, their claim for unjust enrichment otherwise fails. The Judays do not allege that they paid these defendants, or any defendants at all, for legal services. While these firms may have received a benefit from the Sadaka firm, such as payment or a promise of future payment, they received nothing from the Judays themselves. The Judays simply cannot recover for benefits they did not confer.

The Judays' claim for unjust enrichment therefore fails, and we will dismiss Count III as to the Bern and Lopez McHugh defendants.