IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRIS JUDAY et al.          :        CIVIL ACTION
                                   :
            v.                   :        NO. 19-1643
                                   :
MARK SADAKA et al.          :

MEMORANDUM

Bartle, J.                                        August 31, 2023

Before the court is another motion of plaintiffs Chris and Pat Juday to stay their legal malpractice action against defendants Mark T. Sadaka and Sadaka Associates LLC.

In 2016 plaintiffs brought a product liability suit in this District against Merck & Co., Inc. and Merck Sharp & Dohme Corp. ("Merck") in which plaintiff Chris Juday alleged he contracted chicken pox as a result of being inoculated with Merck's vaccine against shingles, Zostavax. His wife, Pat Juday, alleged a loss of consortium. Chris Juday, et al. v. Merck & Co., Inc., et al., Civ. A. No. 16-1547 (E.D. Pa. filed Apr. 5, 2016). The case was transferred to Multidistrict Litigation No. 2848 for pretrial proceedings before the undersigned. Defendants represented plaintiffs in that underlying action.

Mr. Juday was inoculated with Zostavax on March 2, 2014 and began suspecting that he developed an injury from the vaccine on March 13, 2014. Nonetheless, the complaint in the

action was not filed until April 5, 2016, which was outside the two-year statute of limitations for tort claims under Pennsylvania law.  Consequently, the court granted summary judgment in favor of Merck and against the Judays on the ground that the Judays' action was not timely filed.  The Court of Appeals affirmed.  Juday v. Merck & Co., Civ. A. No. 16-1547, 2017 WL 1374527 (E.D. Pa. Apr. 17, 2017), aff'd, 730 F. App'x 107 (3d Cir. 2018).

On April 16, 2019, plaintiffs initiated the instant legal malpractice action.  They allege that defendants are liable for permitting the statute of limitation to expire as to the underlying action.  In Pennsylvania, a claim of legal malpractice consists of three elements: "1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff."  Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998).

To demonstrate the third element, causation, the plaintiffs must demonstrate that they would have prevailed in the original action but for attorney negligence.  The plaintiff must essentially prove a "case within a case."  Id. at 1030.

Fact discovery was initially bifurcated in this action so that discovery related to defendants' acts and omissions

2

commenced before discovery related to causation, that is,
discovery related to the Judays' "case within a case."  The
court lifted the stay and ordered the parties to conduct fact
discovery on the issue of causation starting November 4, 2020.

On October 18, 2021, plaintiffs filed the first of
their stay motions.  It sought to stay this action while the
parties in the Zostavax MDL litigated "Group A" bellwether
cases.  These were cases in which plaintiffs alleged they
suffered shingles as a result of being inoculated with Merck's
vaccine.  At the time, the Judays considered their claims akin
to those in the Group A cases.  They acknowledged the "likely .
. . preclusive effect" that rulings adverse to the Group A
bellwether plaintiffs would have on their case. Doc. # 129.  The
court granted plaintiffs' motion to stay on November 18, 2021.

The Group A cases ultimately failed.  In December 2021
the court excluded the plaintiffs' sole expert witness on the
issue of causation in the five Group A bellwether cases and
consequently granted summary judgment in favor of Merck in each
of them.  In re Zostavax (Zoster Vaccine Live) Prod. Liab.
Litig., 579 F. Supp. 3d 675 (E.D. Pa. 2021).  The bellwether
plaintiffs appealed but thereafter dismissed their appeals.  The
remaining 1,189 Group A cases have since been dismissed.[1]

_____

1.   On March 30, 2022, the court granted Merck's motion for a
case management order, known as a "Lone Pine" order, which

The stay in this action was lifted on June 7, 2022, and the Judays for a few months pressed forward with their claims.  On January 31, 2023, however, the Judays moved for a second stay.  This time, the Judays shifted gears.  Instead of arguing that their case was akin to the Group A cases, now they argued that Mr. Juday's injury was more akin to those advanced in Group B cases, which include plaintiffs who allege that Zostavax caused them to suffer an injury other than shingles or hearing loss.[2]  Plaintiffs' counsel maintained he was unaware of the Group B bellwether program in 2020 when plaintiffs requested the first stay.  While this may be, the court established the Group B bellwether program in a January 30, 2019 Pretrial Order that at all times has been publicly available on the MDL docket.  See Pretrial Order No. 82, In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig., MDL No. 18-2848 (Doc. # 146).

Contrary to plaintiffs' assertions, the court has granted them ample access to MDL discovery on the issue of

---

required each of the 1,189 Group A plaintiffs to produce laboratory reports showing that their shingles rash was caused by Zostavax.  None was able to do so.  Consequently, on December 6, 2022, the court entered an order dismissing these actions under Rule 41(b) of the Federal Rules of Civil Procedure.  In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig., MDL No. 2848, 2022 WL 17477553 (E.D. Pa. Dec. 6, 2022), appeal filed (3d Cir. Jan. 13, 2023).  An appeal from that order is pending.

2.   Group B also includes plaintiffs who claim that they contracted shingles as well as another injury.

causation.  On August 3, 2021, the court entered a Pretrial
Order in the MDL that granted plaintiffs "access to fact
discovery [produced in the MDL] that is relevant to their
claims" in the present suit.  See Pretrial Order No. 371, In re
Zostavax (Zoster Vaccine Live) Prod. Liab. Litig., MDL No. 18-
2848 (Doc. # 779); see also In re Zostavax (Zoster Vaccine Live)
Prod. Liab. Litig., MDL No. 18-2848, 2021 WL 3375941 (E.D. Pa.
Aug. 3, 2021).  In addition, the court has accommodated numerous
requests for extensions to the fact discovery deadlines in this
action.  This includes five extensions during the causation-
specific fact discovery period, which elongated this process by
nearly 30 months.

Now, over four years after the case was filed, fact
discovery closed on May 1, 2023.  The parties finished
exchanging expert witness reports on July 31, 2023.  Expert
depositions were ordered to take place by August 31, 2023,
although they have not yet taken place.  The case is set for
trial in January 2024.

The court may in its discretion issue a stay in a case
"to promote . . . fair and efficient adjudication."  Tyler v.
Diamond State Port Corp., 816 F. App'x 729, 730 n.1 (3d Cir.
2020) (quoting United States v. Breyer, 41 F.3d 884, 893 (3d
Cir. 1994)).  Plaintiffs first contend that a stay is necessary
due to "substantial difficulties in attempting to obtain

information for their action."  Plaintiffs' counsel complains

that his discovery requests have been "roundly rebuffed."  As

recounted above, the court has granted plaintiffs significant

access to discovery in the MDL.  Fact discovery in this action

closed three months ago.  Each of these discovery disputes that

plaintiffs' counsel references has already been adjudicated.[3]

This is not a valid basis for a stay.

Plaintiffs also contend that a stay is warranted to

await the outcome of the "Group B" cases in the Zostavax MDL.

As mentioned above, Group B includes plaintiffs who allege that

Zostavax caused them to suffer from any injury other than

shingles or hearing loss.  The injuries in Group B vary widely.

Causation proof in each of these cases will likewise vary.

Neither of the two plaintiffs in the current Group B bellwether

case management program alleges suffering chickenpox as a result

of receiving Zostavax.  Plaintiffs do not assert that there are

---

3.   The court also notes that the Judays gained access to
documents related to at least one of the discovery requests they
reference now.  The Judays sought documents pertaining to a
Zostavax injury claim that defendants filed on behalf of a
different plaintiff in the parallel New Jersey Multicounty
Litigation ("MCL").  Those documents were subject to a
confidentiality order entered in the MCL.  The Judays served a
request for documents on defendants, to which defendants
objected, and the court denied the Judays' consequent motion to
compel.  See Doc. # 93.  Yet, the Judays did ultimately gain
access to these documents from Merck after they negotiated a
protective order, which was approved by this court on April 15,
2021.  See Doc. # 102.

any Group B cases involving individuals who allege Zostavax caused them to contract chickenpox (as opposed to shingles). There is no basis to conclude that the resolution of any Group B bellwether cases will aid the Judays in prosecuting their case in any way.

The present motion to stay is disingenuous at best. The Court held a status conference in the courtroom on August 3, 2023 to deal with the disputes between counsel as to the dates for the depositions of plaintiffs' experts.  Pursuant to the Court's June 28, 2023 Order, they were to take place by August 31, 2023.  At the outset of the conference, counsel for the Judays announced to the Court that he intended to file a motion to withdraw his appearance.  In essence, he complained about his difficulty in getting along with the court and defense counsel. In response to an inquiry from the court, he conceded he had not discussed the withdrawal issue with the Judays.  As a result of counsel's intent to file a motion to withdraw, the Court adjourned the conference to await the motion.

The announcement that he intended to file a withdrawal motion, as it turned out, was clearly a delaying tactic.  He did not obtain the consent of the Judays to withdraw.  This maneuver having failed, he changed course but not direction.  He filed this pending motion for a stay on August 9, 2023 to achieve the same end, that is, to delay this action.

The current cries of plaintiffs' counsel about needing more time ring hollow.  The Court had conducted a telephone status conference on July 31, 2023 with him and counsel for defendants.  The court's law clerk was also present.  During the conference, counsel for the Judays represented to the Court in no uncertain terms that he was "ready to go" to trial even without conducting expert depositions.

In sum, there is no sound basis for a stay in this action.  Pausing this case again would hinder, not "promote . . . fair and efficient litigation."  Tyler, 816 F. App'x at 730 n.1.  The Court will promptly schedule a hearing to deal with the depositions of plaintiffs' experts and expects no further delays.  Accordingly, the motion of plaintiffs Chris and Pat Juday to stay this action will be denied.